possess at the time of my decease," cannot serve to defeat the apparent gift. The bonds, which were the subject of the gift, were purchased by her from her husband's estate upon Mr. Affleck's advice, and it may well be that she had in mind the purchase of more of the bonds from the same source. Later, when she executed her last will, she made no reference to this class of securities, a circumstance which is well in harmony with the assumption that the reference in the previous will had to do with a situation not present when the last will was executed, because she had not acquired the bonds which it had been her intention to purchase.

As I view the evidence, the actual intention to make a present gift of these bonds to the defendant is clearly established, and there should, therefore, be judgment for the determination of the disputed question of title in favor of the defendant. I have indicated upon the findings of fact and conclusions of law proposed by the plaintiff my disposal of the requests to find. Form of findings, in accordance with those proposed by the defendant, and proposed judgment, may be submitted upon notice of settlement.

<hr />

### RELYEA v. CENTRAL NEW ENGLAND RY. CO.

(Supreme Court, Appellate Division, Second Department. March 11, 1910.)

CARRIERS (§§ 318, 346*)—ACTION FOR DEATH OF PASSENGER—EVIDENCE—NEGLIGENCE AND CONTRIBUTORY NEGLIGENCE.

    In an action for the death of a passenger, killed by a switch engine after alighting from a train away from the depot, evidence *held* to show defendant was not negligent, and decedent was guilty of contributory negligence.

    [Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 1307, 1401; Dec. Dig. §§ 318, 346.*]

Appeal from Trial Term, Dutchess County.

Action by George Relyea, administrator of Armine Relyea, deceased, against the Central New England Railway Company. From a judgment for plaintiff, and from an order denying a new trial, defendant appeals. Reversed.

Argued before HIRSCHBERG, P. J., and WOODWARD, THOMAS, RICH, and CARR, JJ.

I. R. Oeland, for appellant.
Charles Morschauser, for respondent.

THOMAS, J. Plaintiff's intestate alighted from defendant's train from the east on the north side thereof, and away from the depot, with ample facilities, walked over rough, untrodden ground a distance of 18 feet, with a sharp descent of 4 feet 7 inches, crossed a switch track, walked 12 feet farther on descending grade to another switch track, without looking either way entered thereon at a point about 5 feet from a sign: "Railroad Property. Not a Public Way. Dangerous"—and was struck by a backing shifting engine with one empty and two loaded cars, coming on an upgrade and starting near

the beer house, some 173 feet away from the accident. The engineer testified that he blew four blasts for the switch, and upon starting the bell was rung by the fireman, until the latter called to him to stop the engine, which the engineer did as soon as possible. There were witnesses who testified that they did not hear bell or signal. The engineer was on the north side of his engine, and with the tender in front could not see a person entering the track from the south side.

Near the beer house was a way beaten by use. People used this way in some instances, as it saved walking two blocks further, and while the evidence shows that it was the apparent and used way, persons did at times depart from it, or cross easterly of it, where there was no path, and the land steeper and rougher. There is also evidence that persons crossed this path to get to and from the cars, alighting from the north side, and there is evidence of a woman entering the rear car from the north side. There is no evidence that the defendant ever invited such conduct, unless by failure to use compulsion to stop it, nor that the company's servants ever opened the gates on the north side, and in the present instance there is not sufficient evidence that decedent found the gate open, although a person who alighted from the other end of the same car stated that he saw him turn and take the first step down on the platform, and thought that he did not have time to open the gate, and Mrs. Higgins, called by defendant, saw him step down, but did not see him open the gate. I think that the plaintiff's evidence shows strongly that the path was the usually traveled way for persons crossing the defendant's switching yard, and that persons going to or from the cars or depot made principal use of it, and that the crossing at other places to the eastward was exceptional and by stragglers.

The decedent's contributory negligence clearly appears by undisputed evidence. He was in a switching yard, often in busy use, going to his house in the neighborhood. He had all knowledge, and made no use of it. He passed near the warning sign, and remained unwarned. Three witnesses stated that they did not bother to look at it, and the decedent seemed in like manner disposed. It was not the privilege of the defendant to force persons to look at it, nor its duty to place pickets on the grounds to expel strollers. The land was not appropriated to passengers, it was not suitable for passage, it was given over to a known, dangerous, but legitimate, use, and yet the decedent assumed the liberty to cross where he would without looking for the very dangers that a switching yard suggests, with the added warning of the signboard. He was probably preoccupied, but is not excused, as the defendant did not cause his diversion. The defendant was not negligent, and the decedent was.

The judgment and order should be reversed, and a new trial granted; costs to abide the event. All concur.